NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DERRICK GRIGGS,<br><br>       Plaintiff,<br><br>   v.<br><br>MONMOUTH COUNTY FAMILY COURT, *et al.*,<br><br>       Defendants. | Civil Action No. 25-14832 (RK) (JBD)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Derrick Griggs' ("Plaintiff") application to proceed *in forma paurperis* (ECF No. 1-4, "IFP"), and his Complaint (ECF No. 1, "Compl."). Plaintiff also filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 3.) For the reasons explained below, the application to proceed *in forma pauperis* is **GRANTED**, the Complaint is **DISMISSED**, and the Emergency Motion is **DENIED** as moot.

**I.     BACKGROUND**

Plaintiff brings the present action pursuant to 42 U.S.C. § 1983, alleging that he has been unconstitutionally separated from his minor son, I.G[1], for "over 500 days." (Compl. ¶ 13.) According to Plaintiff, he has been subject to "unlawful family separation in violation of

---

[1] Although Plaintiff identifies his minor sons by their full names in his filings, the Court refers to minors only by their initials. *See* Fed. R. Civ. P. 5.2(a)(3) (requiring filings to refer to a minor by initials); Local Civ. R. 5.2(17)(3) (same).

substantive and procedural due process rights under the First and Fourteenth Amendments." (*Id.* ¶ 2.) Plaintiff alleges that he has been "unlawfully separated" from I.G. despite purported findings that he did not abuse either I.G. or his other minor son, D.G. (*Id.* ¶ 13.)[2]

Most key factual details are missing from the Complaint. Although Plaintiff's filings allude to prior allegations of physical abuse (*see* ECF No. 1-2 at 9), the substance of these allegations is murky and it is unclear whether these allegations caused Plaintiff to lose custody of I.G. Furthermore, Plaintiff does not explain the current custody arrangement that he seeks to undo: I.G. appears to be living with someone else, but that person is never identified; D.G. appears to still be living with Plaintiff. Also absent from any pleading or exhibit is the nature of Plaintiff's relationship with I.G. and D.G.'s mother. Some exhibits indicate he was divorced from Dr. Abeer Griggs, who now appears to be deceased. (*Id.* at 2, 13.) Plaintiff also does not allege when he initially lost custody over I.G.—before or after his ex-wife's death.

Plaintiff brings his Section 1983 claims against fifteen defendants, which the Court categorizes hereinbelow for ease of identification:

- (1) the Honorable Teresa Kondrup Coyle, J.S.C.; (2) the Honorable Thomas Comer, J.S.C.; (3) the Honorable Natalie Watson, J.S.C.; and (4) the Honorable Marc Lemieux, J.S.C. (together, the "Judicial Defendants")

- (5) Monmouth County Family Court; and (6) Monmouth County Sherriff's Office (together, the "County Defendants");

---

[2] Plaintiff points to four different occasions where individuals or entities determined that he was not abusive towards his children. *First,* non-party Dr. Mitch Abrams, who Plaintiff describes as an "independent evaluator," purportedly found no evidence of abuse, observed a "secure and loving bond" between Plaintiff and his two children, I.G. and D.G., and concluded that allegations of abuse from the children were "coached" or "strategically motivated." (*Id.* ¶ 14.) *Second,* Defendant New Jersey Division of Child Protection & Permanency allegedly conducted multiple investigations and found reports of abuse to be "unfounded" or "not established." (*Id.* ¶ 15.) *Third,* a "Certified Polygraph Examination," which Plaintiff underwent on January 30, 2024, allegedly found "no deception indicated" after Plaintiff was asked about instances where he might have abused his children. (*Id.* ¶ 16.) *Fourth,* non-party Robert Gardner, a licensed social worker, allegedly determined that D.G. was "emotionally healthy, resilient, and securely bonded" with Plaintiff. (*Id.* ¶ 17.) Alongside his Complaint, Plaintiff filed documentation purporting to support each individual/entity's findings. (*See* ECF No. 1-2.)

- (7) New Jersey Division of Child Protection & Permanency;

- (8) Rania Elessawi; (9) Taisier Elessawi; and (10) Mervat Elessawi (together, the "Elessawi Defendants"); and

- (11) Bettina Munson; (12) Lomurro Munson LLC; (13) Guardian *Ad Litem* Steve Enis; (14) Dr. William Frankenstein; and (15) Bonnie M.S. Reiss (together, the "Additional Defendants").

(Compl. at 1.) Plaintiff identifies Defendant Monmouth County Family Court as "a state actor operating under the authority of the New Jersey judiciary," but otherwise groups all Defendants together as individuals "whose acts contributed to the violations." (*Id.* ¶¶ 5–6.)

Despite previewing claims pursuant to the First *and* Fourteenth Amendments to the United States Constitution (*id.* ¶ 2), Plaintiff brings three causes of action under just the Fourteenth Amendment—violations of substantive due process, procedural due process, and equal protection—and a fourth claim not explicitly pursuant to any constitutional provision, "Denial of Impartial Tribunal Due to Judicial Conflict of Interest." (*See id.* at 3.) Plaintiff seeks (1) a declaration that Defendants "violated Plaintiff's constitutional rights;" (2) emergency injunctive relief reuniting Plaintiff with his son, I.G.; (3) appointment of an independent review from outside of Monmouth County; (4) damages in the amount of $3 million for lost income, assets, and professional opportunities and $20 million in punitive damages; (5) attorneys fees and costs; and (6) prevention of "further judicial reassignment or delay until review is complete." (*Id.*)

Plaintiff filed the subject Complaint and IFP application on August 15, 2025. (ECF No. 1.) On August 29, 2025, he filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 3, the "TRO Motion.") The TRO Motion seeks, *inter alia*, an order requiring Plaintiff to be reunited with I.G. and mandating "reunification therapy" with costs to be paid by Defendants or the estate of Plaintiff's ex-wife, Dr. Abeer Griggs. (*See* ECF No. 3-3.)

## II.    IFP SCREENING

Under 28 U.S.C. § 1915, a plaintiff may proceed *in forma pauperis*—without paying a filing fee. The Court engages in a two-step analysis when considering IFP applications: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse*, No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)). The IFP statute requires that a plaintiff demonstrate financial need through the submission of a complete financial affidavit. *See Atl. Cnty. Cent. Mun. Court Inc. v. Bey*, No. 24-0105, 2024 WL 1256450, at *1 (D.N.J. Mar. 22, 2024) (citing 28 U.S.C. § 1915(a)).

Despite Plaintiff's once-robust salary of $20,000 per month, which he maintained from September 2020 through April 2024, his IFP application exhibits that he does not have the necessary funds to pay for court fees. Plaintiff indicates that he earned $20,000 per month (or $240,000 per year) as an "executive" at New York City-based NHS NYC, Inc. (IFP at 2, 5.) However, Plaintiff purportedly lost his job "because of this case" and has "not had consistent work in 16 months." (*Id.* at 5.) Accordingly, Plaintiff reports that he made only $500 per month through self-employment over the last twelve months, has only $200 in his checking account, and has no additional income. (*Id.* at 1–2.) Plaintiff's expenses far exceed his limited income, amounting to $5,165 per month based on $3,375 in rent or mortgage, $500 in medical and dental expenses, $400 in food, and additional expenses for utilities, clothing, transportation, recreation, and insurance. (*Id.* at 4.) Notably, Plaintiff owns two vehicles—a 2012 Buick Enclave valued at $5,000 and a

Porsche Panamera valued at $10,000. (*Id.* at 3.) Plaintiff does not assert any installment payments on any vehicles, so it appears he owns these cars outright.

Plaintiff's financial picture is, at best, lopsided. He attests to earning only $500 per month for the last 12 months and has not worked steadily in nearly a year-and-a-half. (*Id.* at 1, 5.) At the same time, his expenses appear to be more than *ten times* his stated monthly income. (*Id.* at 5.) Plaintiff discloses no savings, no credit card debt, no loans, and no financial help from any other party. (*Id.* at 1–2.) While the financial picture appears a bit dubious, the Court finds that Plaintiff is unable to pay the filing fee. Accordingly, Plaintiff's IFP application is **GRANTED**.

### III.    COMPLAINT SCREENING

Having granted Plaintiff's IFP application, the Court proceeds to screen Plaintiff's Complaint. The Court may dismiss any claims that are "(1) . . . frivolous or malicious; (2) fail[] to state a claim upon which relief may be granted; or (3) seek[] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). A court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "In determining whether a claim should be dismissed . . . a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Plaintiff's Complaint suffers from a variety of insurmountable defects. The Complaint as a whole fails to comply with Federal Rule of Civil Procedure ("Rule") 8; some Defendants are immune from suit; some Defendants are not "persons" pursuant to 42 U.S.C. § 1983; and the rest

are not alleged to have been acting under the color of state law. Accordingly, Plaintiff's Complaint is dismissed without prejudice.

## A. RULE 8

Rule 8 requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment must be 'simple, concise, and direct.'" *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 52 (3d Cir. 2015) (quoting Fed. R. Civ. P. 8(d)(1)). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). At its core, the purpose of a pleading is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a court should liberally construe the pleadings of a pro se plaintiff, the complaint must still comply with the pleading requirements of Rule 8." *Prelle v. United States*, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

This Court may, *sua sponte*, dismiss a complaint for failure to comply with Rule 8. *Muhammad v. United States Bd. of Governors Postal Sys.*, 574 F. App'x 74, 74 (3d Cir. 2014). Such dismissal is appropriate when the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Here, Plaintiff's Complaint fails to comply with Rule 8 because it does not delineate what unlawful conduct any particular Defendant engaged in, leaving defendants "unable to discern which allegations apply to any of them individually." *See Palmer v. United States*, No. 21-11721, 2022 WL 310208, at *6 (D.N.J. Feb. 1, 2022). This is quintessential group pleading, which is

6

prohibited. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012)). Plaintiff's barebones factual assertions are alleged against all Defendants as a group, and describe fourteen Defendants together in one fell swoop as having simply "contributed to the violations." (Compl. at 2.) As just one example, Plaintiff names four judges as defendants, but does not explain which of these Judicial Defendants made the initial custody determination and which of the Judicial Defendants, if any, are responsible for the alleged "500 days without a final hearing." (*Id.* ¶ 13.) Furthermore, there are a variety of other Defendants whose identity and involvement in the alleged activity eludes the Court completely, such as the Elessawi Defendants, Bettina Munson, and Lomurro Munson, LLC.

On the basis of Rule 8 alone, the Court can dismiss Plaintiff's Complaint *in toto*. However, for completeness, the Court hereinbelow explains some additional reasons that Plaintiff's Complaint cannot withstand judicial review pursuant to 28 U.S.C. § 1915(e).

### B. JUDICIAL IMMUNITY

Plaintiff names four judges as defendants and seeks both prospective and retrospective relief as to each. (*See* Compl. at 3.) However, all Judicial Defendants are immune from suit because, under the doctrine of judicial immunity, they are "not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (citation omitted). For actions brought pursuant to 42 U.S.C. § 1983—as this one is—the doctrine applies to Plaintiff's requests for both monetary relief, *see Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000), and injunctive relief, *see Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006). *See Rutkowitz v. Turner*, No. 17-6622, 2018 WL 3388306, at *5 (D.N.J. July 12, 2018) (noting judicial immunity "bars injunctive relief against State Court judges brought under" § 1983). Indeed, 42

U.S.C. § 1983 states that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006).

Whether an act is undertaken in a judge's "judicial" capacity depends upon whether the act "is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. As the United States Supreme Court has made clear, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57 (citation omitted). Plaintiff has failed to identify any action taken by any Judicial Defendant that was "in clear absence of all jurisdiction." Rather, the alleged unlawful activity, which purportedly includes holding hearings and issuing custody orders, are squarely within the traditional jurisdiction of a court.

### C. DEFENDANTS ARE NEITHER "PERSONS" NOR ACTED UNDER THE COLOR OF STATE LAW

Plaintiff cannot properly assert a Section 1983 claim against any of the remaining Defendants—the County Defendants, the New Jersey Division of Child Protection & Permanency, the Elessawi Defendants, or the Additional Defendants. To state a claim under Section 1983, a plaintiff must show "(1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a *person* acting under color of state law." *Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 221, 226 (D.N.J. 2021) (citation omitted) (emphasis added); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). A claim under Section

1983 can only be asserted against a proper "person." A brief analysis of each of the remaining Defendants demonstrates that a 1983 claim cannot be stated against any of them.

*First*, "States are not 'persons' within the meaning of § 1983, and, therefore, cannot be among those held liable for violations of the civil rights statute." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996). Both the Third Circuit and other courts in this District have previously held that Defendant New Jersey Division of Child Protection & Permanency is an "arm of the state," and is therefore not a "person" that can be held liable under Section 1983. *See Gonzalez v. New Jersey Dep't of Children & Families*, 545 F. Supp. 3d 178, 201–02 (D.N.J. 2021); *O'Bryant v. New Jersey Div. of Child Protection & Permanency*, 818 F. App'x 143, 147 (3d Cir. 2020) (affirming dismissal of monetary claims against defendant because it is an arm of the state and is therefore immune from suit under the Eleventh Amendment).

*Second*, and similarly, the County Defendants are not properly "persons" under Section 1983. *See El-Bey v. Peer*, No. 05-3765, 2006 WL 231627, at *5 (D.N.J. Jan. 30, 2006) (holding that neither Monmouth County Superior Court nor Monmouth County Sheriff's Office is a "person" under Section 1983); *Robinson v. Mercer Cnty. Courthouse*, No. 12-4114, 2012 WL 4662967, at *3 (D.N.J. Oct. 1, 2012) ("Neither a courthouse, nor a county court, is a 'person' subject to liability under § 1983."); *see also Duffy v. County of Bucks*, 7 F. Supp. 2d 569, 578 (E.D. Pa. 1998) (holding that county sheriff's office "is not a suable entity [under Section 1983] and must be dismissed.").

*Third,* the Complaint contains no allegations to suggest that either the Elessawi Defendants or the Additional Defendants were acting under the color of state law. Indeed, Plaintiff has made no averments as to who any of these defendants actually are or how they are involved in Plaintiff's custody case. Plaintiff groups these eight defendants together (along with others) and describes

them simply as "other individuals identified in the caption whose acts contributed to the violations." (Compl. at 2.) Accordingly, Plaintiff has failed to state a Section 1983 claim as to any of the remaining defendants. *See Karupaiyan v. Singh*, Nos. 21-3193 & 22-1159, 2022 WL 6634603, at \*1 (3d Cir. Mar. 1, 2022) (affirming dismissal of IFP complaint because plaintiff "did not allege that any of the defendants acted under color of state law" (citing *Great W. Mining & Mineral Co.*, 615 F.3d 159, 175–76 (3d Cir. 2010))).

Because Plaintiff cannot bring any of his claims pursuant to Section 1983—the only federal statute asserted in his Complaint[3]—his Complaint must be dismissed.

### D. INJUNCTIVE RELIEF IS UNAVAILABLE

Finally, the injunctive relief Plaintiff seeks—court-mandated reunification with I.G.—is beyond this Court's jurisdiction. A federal court cannot alter Plaintiff's state family court custody order by either restoring parenting time or granting full custody of I.G. It is "axiomatic that federal courts do not have jurisdiction to adjudicate child custody disputes." *Hone v. Tadros*, No. 21-5970, 2022 WL 494111, at \*2 (D.N.J. Feb. 17, 2022). The United States Supreme Court has held that this "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). "To the extent that Plaintiff seeks review of any temporary or permanent child custody or parental rights determinations, his recourse lies in an appeal within the state court system because this federal court lacks jurisdiction to entertain these claims." *Foster v. New Jersey Div. of Child Prot. & Permanency*, No. 17-13572, 2018 WL 6069632, at \*2 (D.N.J. Nov. 20, 2018); *see Douce v. New Jersey Div. of Child Prot. & Permanency*, No. 20-2619, 2021 WL 825451 (D.N.J. Mar. 4, 2021),

---

[3] The Court cannot discern whether Plaintiff's fourth cause of action, "Denial of Impartial Tribunal Due to Judicial Conflict of Interest" is meant as another claim under Section 1983, or a separate federal or state cause of action. It does not appear that such a standalone legal claim exists.

*aff'd sub nom. Vaughn:Douce v. New Jersey Div. of Child Prot. & Permanency*, No. 21-1596, 2021 WL 3403670 (3d Cir. Aug. 4, 2021).

Therefore, because the Court is without jurisdiction to disrupt I.G.'s current custody arrangement, the requested injunctive relief "requiring immediate reunification of Plaintiff and [I.G.]" is unavailable. (*See* Compl. at 3.)[4]

Accordingly, for the reasons set forth above and for other good cause shown,

**IT IS** on this 10th day of September, 2025, **ORDERED** that:

1. Plaintiff's application to proceed *in forma pauperis* (ECF No. 1-4) is **GRANTED**;

2. Plaintiff's Complaint (ECF No. 1) is **DISMISSED** pursuant to 28 U.S.C. § 1915(e);

3. Plaintiff's Emergency Motion (ECF No. 3) is **DENIED** as moot;

4. Plaintiff may have this case reopened within thirty (30) days of the date of entry of this Memorandum Order by filing an amended complaint;

5. If Plaintiff fails to file an amended complaint within the thirty (30) days, the Complaint will be dismissed with prejudice;

6. Upon receipt of an amended complaint within the time allotted by this Court, the Clerk will be directed to reopen this case;

7. The Summons shall not issue at this time, as the Court's *sua sponte* screening of the amended complaint has not yet been completed; and

8. The Clerk's Office is directed to terminate the Motion at ECF No. 3; and

---

[4] Because the Court dismissed Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e), his Emergency Motion (ECF No. 3) is denied as moot.

9.  The Clerk's Office is directed to **CLOSE** this matter and serve on Plaintiff by regular

U.S. mail this Memorandum Order.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE